## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

CHARITO MELVIN,

      Plaintiff,

v.                                                                      Case No.  5:20-cv-51-MW/MJF

WALMART INC.,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

In this civil action, Plaintiff Charito Melvin alleges violations of the ADEA, the ADA, and Title VII, as well as a breach of contract under Florida law. Defendant Walmart Inc. moves to dismiss four of Melvin's five claims. Doc. 50. Melvin has responded in opposition. Doc. 53. Because Melvin has failed to state a claim upon which relief can be granted as to Count Two (retaliation), Count Four (hostile-environment harassment), and Count Five (breach of contract), but has stated a claim as to Count Three (failure-to-accommodate disability discrimination), the undersigned recommends that the District Court grant in part and deny in part Walmart's motion to dismiss.[1]

_____

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b).

# I. BACKGROUND

In addressing Walmart's motion to dismiss, the undersigned considered three of Melvin's filings: (1) Melvin's August 2, 2019 amended Equal Employment Opportunity Commission ("EEOC") charge; (2) Melvin's March 31, 2020 EEOC charge; and (3) Melvin's seventh amended complaint. Doc. 47; Doc. 61-1 at 2; Doc. 64 at 3.

## A.    Melvin's Two EEOC Charges Filed on August 2, 2019

On August 2, 2019, Melvin filed two separate charges of discrimination with the Florida Commission on Human Rights ("FCHR") and the EEOC. The second EEOC charge that Melvin filed on August 2, 2019, is labeled "Amended" in the top right corner of the charge. Doc. 61-1 at 2. Melvin's amended August 2, 2019 EEOC charge contains all of the allegations in her original August 2, 2019 EEOC charge, as well as additional allegations that support Melvin's ADA claim. *Id.*; Doc. 64 at 2. Because Melvin's amended EEOC charge of August 2, 2019, includes all of the claims raised in both EEOC charges that Melvin filed on August 2, 2019, the undersigned will refer to both charges collectively as Melvin's "August 2, 2019 EEOC charge."

In Melvin's August 2, 2019 EEOC charge, Melvin alleged that she is a Pacific-Islander. Melvin further alleged that Walmart eliminated Melvin's position as a certified pharmacy technician, but Walmart retained three younger, non-Pacific

Islander certified pharmacy technicians. Doc. 61-1 at 2. Melvin also alleged that she was reassigned to Walmart's liquor department in violation of her "religious beliefs and physical limitations." *Id.* Melvin asserted that Walmart violated: (1) Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a); (2) the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; and (3) the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.* Doc. 61-1 at 2.

## B.     Melvin's EEOC Charge Filed on March 31, 2020

On March 31, 2020, Melvin filed a third charge with the FCHR and EEOC.[2] Doc. 64. In her March 31, 2020 EEOC charge, Melvin alleged that Walmart eliminated her position as a certified pharmacy technician in June 2019. *Id.* at 3. Although Melvin did not file her first EEOC charge until August 2, 2019, she inexplicably alleges that on July 19, 2019, Walmart assigned her to work in another department[3] *after learning that Melvin had filed a charge with the EEOC on August 2, 2019. Id.* Melvin does not explain how Walmart knew on July 19 that Melvin would file her EEOC charge on August 2.

_____

[2] Although Melvin did not attach to her seventh amended complaint the right-to-sue letter associated with her March 31, 2020 EEOC charge, she previously filed it. Doc. 25 at 39.

[3] Melvin's third EEOC charge states that Walmart altered her schedule on "July 19, *2020*," a date that had not yet occurred when Melvin filed her third EEOC charge on March 31, 2020. Doc. 64. Presumably, Melvin meant to allege "July 19, *2019*."

Melvin further alleged in her third EEOC charge that on an unspecified date, her supervisor "humiliated [her] because of [Melvin's] use of the English language and stating, 'Don't send [Melvin] she hardly speaks English!'" Doc. 64 at 3. Melvin also alleged that on October 17, 2019, she "was diagnosed with lower back problems and was restricted from prolonged standing." *Id.* After reporting this diagnosis to her supervisor, Melvin received a stool to sit on "whenever needed." *Id.* Three days later, on October 22, 2019, the supervisor informed Melvin that she no longer had permission to use the stool because the note Melvin provided "did not suffice." *Id.*

Melvin also alleged in her third EEOC charge that Walmart customers occasionally complained about receiving the wrong medication because Walmart dispenses medication without requesting formal identification. Doc. 64 at 3. Melvin alleged that on one occasion, Walmart blamed Melvin for such an error. *Id.* Walmart did not, however, issue a "reprimand or written warning" because "it is Walmart's policy to cover up such incidents without proper investigation." *Id.* Melvin alleged that Walmart accused her of making this mistake because she is a "person of color" and the pharmacy staff believed that Melvin did not speak English well. *Id.* at 3-4. Melvin again alleged that Walmart violated: (1) the ADEA, (2) the ADA, and (3) Title VII.

C.    **Melvin's Seventh Amended Complaint**

In her seventh amended complaint, Melvin alleges that she is a sixty-five-year-old woman of Filipino descent. Doc. 47 at 5. She asserts five claims against Walmart:

> (1) Unlawful Discrimination by Age on 6/26/2019
> 1 Plaintiff is 65 years old Filipino and member of
> 2 protected class. She was removed from her position while
> 3 white under 40 workers remained in pharmacy workplace
>
> (2) Unlawful Discrimination by Retaliation
> 1 After filing charge with EEOC accused of mishandling opiod
> 2 drugs and reported pharmacy staff to FDA.
>
> (3) Unlawful Discrimination by Disability 1 July 2020
> 1 Produced medical note (Dr. Kasseem) limiting time standing.
> 2 Allowed occasional seating for 3 days then prohibited.
>
> (4) Unlawful Discrimination by National Origin
> 1 Plaintiff humilated before customers by supervisor Kelly
> 2 Nelson for lack of proficiency in English language.
>
> (5) Breach of Contract
> "Talking Points contract offered a) choice of alternative employment
> b) severance pay offered but entitlement to federal package denied c)
> promise to guarantee works hours would remain same not honored.
> 8:30 am to 7:30 pm became 4pm until midnight and other erratic hours.

*Id.* (grammatical, spelling, punctuation, typographical, and formatting errors in original).

## II. STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes defendants to move to dismiss actions for failure to state a claim upon which relief can be granted. Fed. R.

Civ. P. 12(b)(6); *Worthy v. City of Phenix City*, 930 F.3d 1206, 1216-17 (11th Cir. 2019). When reviewing a complaint at the motion-to-dismiss stage, the court accepts all well-pleaded factual allegations of the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," rather than the mere possibility that the defendant acted unlawfully. *Id.* (citing *Twombly*, 550 U.S. at 556). That is, the complaint's factual allegations must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (reiterating that Federal Rule of Civil Procedure 8 demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (per curiam) (quotation marks and citations omitted). Additionally, "[m]ere 'labels and conclusions or a formulaic

recitation of the elements of a cause of action will not do,' and a plaintiff cannot rely on 'naked assertions devoid of further factual enhancement.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (internal quotation marks and alteration omitted) (quoting *Iqbal*, 556 U.S. at 678). Courts, however, "hold the allegations of a *pro se* complaint to less stringent standards than formal pleadings drafted by lawyers." *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014).

### III. DISCUSSION

Walmart has moved to dismiss four of Melvin's five claims. Doc. 50 at 6-8.

### A.    Count Two: "Unlawful Discrimination by Retaliation"

In Count Two of her seventh amended complaint, Melvin alleges that after she filed an EEOC charge, Walmart unlawfully retaliated against her by accusing her of mishandling opioids. Doc. 47 at 5. Walmart asserts that Count Two should be dismissed because Melvin has failed to plausibly allege that she suffered an adverse employment action and has failed to allege a causal connection between an adverse employment action and her protected activity. Doc. 50 at 10-13.

Although Melvin's seventh amended complaint fails to specify the basis for her retaliation claim, retaliation claims under the ADEA, Title VII, and the ADA share the same three elements. To state a claim of retaliation, a plaintiff must allege:

(1)    he engaged in statutorily-protected expression or action;

(2)    he suffered an adverse employment action; and

(3)   the adverse employment action was causally related to the plaintiff's

protected expression or action.

*Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002). At the motion-to-dismiss stage, therefore, a complaint must allege "sufficient facts to allow the court to draw the reasonable inference" that those three elements occurred. *Boyle v. City of Pell City*, 866 F.3d 1280, 1286 (11th Cir. 2017); *McCone v. Pitney Bowes, Inc.*, 582 F. App'x 798, 801 (11th Cir. 2014) (noting that although the prima-facie elements are an evidentiary standard, after *Iqbal* a plaintiff plausibly must allege the elements of a discrimination claim) (citing *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010)).

## 1.   *Melvin Failed to Allege an Adverse Employment Action*

An adverse employment action must be "materially adverse." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation omitted). That is, the employment action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008) (quoting *White*, 548 U.S. at 68) (noting that an unfavorable performance review was an adverse employment action because it "affected eligibility for a merit pay increase"). Generally, adverse employment actions will not include "petty slights, minor annoyances, and simple lack of good manners." *White*, 548 U.S. at 68; *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th

Cir. 2001) (noting that "not all conduct by an employer negatively affecting an employee constitutes adverse employment action"). The action instead must be "a serious and material change in the terms, conditions, or privileges of employment." *Holland v. Gee*, 677 F.3d 1047, 1057 (11th Cir. 2012) (quoting *Davis*, 245 F.3d at 1239).

Melvin alleges only that Walmart falsely claimed that she had mishandled opioid medication. An employer's mere allegation of poor performance, without more, is not an adverse employment action. *See White*, 548 U.S. at 67 (noting that Title VII's antiretaliation provision "protects an individual not from all retaliation, but from retaliation that produces *an injury or harm*") (emphasis added); *Rayner v. Dep't of Veterans Affs.*, 684 F. App'x 911, 915 (11th Cir. 2017) (holding that an admonishment and a reprimand that did not affect the plaintiff's pay or promotion were not materially adverse employment actions); *Barnett v. Athens Reg'l Med. Ctr., Inc.*, 550 F. App'x 711, 715 (11th Cir. 2013) (determining that reprimands, a negative evaluation, and denial of vacation requests were not adverse employment actions because there was no evidence that they would impact the employee's salary or job status); *Crawford*, 529 F.3d at 974 (holding that an unfavorable performance review was an adverse employment action because it "affected eligibility for a merit pay increase"); *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008) (noting

that "performance reviews typically constitute adverse actions only when attached to financial harms").

Melvin has not alleged any negative repercussions from the alleged false accusation. Indeed, Melvin concedes that the allegation produced "no reprimand or written warning." Doc. 64 at 3. Because there is no allegation that the mishandling-opioids accusation had any effect on Melvin's employment at Walmart, Melvin has failed to plausibly allege that she suffered an adverse employment action. This failure is itself fatal to her retaliation claim.

### 2.    *Melvin Failed to Allege Facts Demonstrating Causation*

In addition to alleging an adverse employment action, a plaintiff who asserts a retaliation claim also plausibly must allege that his statutorily-protected expression was the "but-for" cause of the adverse employment action that he suffered. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013); *Weeks*, 291 F.3d at 1311 (noting that the third element is the same for claims under Title VII, the ADEA, and the ADA). That is, a plaintiff claiming retaliation must allege that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 570 U.S. at 360. To do so, a plaintiff plausibly must allege that "the decision-maker[s] [were] aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated."

*McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008) (quoting *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000)).

According to her March 31, 2020 EEOC charge, Walmart blamed Melvin for improperly dispensing prescription drugs while she worked in Walmart's pharmacy. Doc. 64 at 3. According to Melvin, her position at Walmart's pharmacy was eliminated on June 26, 2019, and she was reassigned to Walmart's liquor department on July 19, 2019. *Id.*; Doc. 47 at 5; Doc. 61-1 at 2. Melvin then filed her first EEOC charge on August 2, 2019. Doc. 64 at 2. Thus, according to Melvin's EEOC charges, Walmart's false accusation about mishandling opioids occurred *before she even filed an EEOC charge*. "By its very nature, retaliatory conduct must come *after* the protected activity." *Kenfield v. Colo. Dep't of Pub. Health & Env't*, 557 F. App'x 728, 733 (10th Cir. 2014). When adverse actions occur prior to the protected activity, this demonstrates "no causality at all" regarding the protected activity. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001) (per curiam); *see Burrage v. United States*, 571 U.S. 204, 210 (2014) (noting that a cause must be the antecedent of a result). Because the alleged adverse employment action occurred even before the alleged statutorily-protected expression—Melvin's filing of her EEOC charges—Melvin cannot plausibly allege that Walmart retaliated against her for filing her EEOC charges. For this second reason, therefore, Melvin has failed to state a claim

of retaliation upon which relief can be granted. Walmart's motion to dismiss this claim, therefore, should be granted.

## B.    Count Three: "Unlawful Discrimination by Disability"

In Count Three of her seventh amended complaint, Melvin alleges that she "[p]roduced [a] medical note (Dr. Kassem) limiting time standing." Doc. 47 at 5. She was "[a]llowed occasional seating for [three] days then prohibited." *Id.* The undersigned construes this to be a failure-to-accommodate claim under the ADA. *Batson v. Salvation Army*, 897 F.3d 1320, 1326 (11th Cir. 2018) (listing the elements of a failure-to-accommodate claim).

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Thus, to state a discrimination claim under the ADA, a plaintiff must allege that:

(1)    he suffers from a disability;

(2)    he is a qualified individual; and

(3)    a "covered entity" discriminated against him on account of his disability.

*Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (per curiam) (quoting *Cramer v. Florida*, 117 F.3d 1258, 1264 (11th Cir. 1997)); *McCone*, 582 F. App'x at 801 (noting that although the prima-facie elements are an

evidentiary standard, after *Iqbal* a plaintiff plausibly must allege the elements of a discrimination claim) (citing *Edwards*, 602 F.3d at 1300).

### 1.    *Melvin Alleged That She Suffers from a "Disability"*

Walmart first argues that Melvin failed to allege that she has a disability. Doc. 50 at 14-15.

Under the ADA, a "disability" includes "a physical or mental impairment that substantially limits one or more major life activities" of an individual. 42 U.S.C. § 12102(1). An "impairment" is any "physiological disorder or condition" that affects "one or more body systems." 29 C.F.R. § 1630.2(h)(1). To qualify as a "disability" under the ADA, that impairment must "substantially limit[] the ability of an individual to perform a major life activity as compared to most people in the general population." *Id.* § 1630.2(j)(1)(ii); *see* 42 U.S.C. § 12102(2)(A) (noting that major life activities include "walking, standing, lifting, bending," and "working"). This does not mean that the impairment must "significantly or severely restrict[] the individual from performing a major life activity." *Mazzeo v. Color Resols. Int'l, LLC*, 746 F.3d 1264, 1269 (11th Cir. 2014) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). Rather, the impairment must negatively affect "the plaintiff's ability 'to perform a major life activity as compared to most people in the general population.'" *Adams v. Crestwood Med. Ctr.*, 504 F. Supp. 3d 1263, 1281 (N.D. Ala. 2020) (quoting 29

C.F.R. § 1630(j)(1)(ii)). "Substantially limits" is "construed broadly in favor of expansive coverage"; it is not "a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i).

In her seventh amended complaint, Melvin alleged that she provided Walmart with a medical note that limited her time standing. Doc. 47 at 5. In her August 2, 2019 EEOC charge, Melvin alleged that Walmart violated the ADA by reassigning her "to the liquor department in violation of [her] . . . physical limitations." Doc. 61-1 at 2.[4] Finally, in her March 31, 2020 EEOC charge, Melvin alleged that she was diagnosed with lower back problems. Doc. 64 at 3. Taken together, these allegations create a reasonable inference that Melvin suffers from an impairment that substantially limits her ability to stand and work, which are major life activities. *See Iqbal*, 556 U.S. at 678. Melvin, therefore, successfully has alleged the first element of an ADA claim.

### 2.   *Melvin Sufficiently Alleged that She is a "Qualified Individual"*

Walmart next argues that Melvin failed to allege that she is a "qualified individual." Doc. 50 at 15-16.

---

[4] At the motion-to-dismiss stage, a court may consider documents that "are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity." *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018); *see Caetio v. Spirit Coach, LLC*, 992 F. Supp. 2d 1199, 1207 (N.D. Ala. 2014) (considering the allegations in a plaintiff's complaint and EEOC charges when ruling on a motion to dismiss). Melvin's August 2, 2019 and March 31, 2020 EEOC charges are either referred to in her seventh amended complaint or are central to her claims. Walmart has not disputed the authenticity of these documents.

Under the ADA, a "qualified individual" is anyone "'who, with or without reasonable accommodation, can perform the essential functions' of her employment." *Surtain*, 789 F.3d at 1246 (quoting 42 U.S.C. § 12111(8)). The "essential functions" of employment are "the fundamental job duties of the employment position the individual with a disability holds." 29 C.F.R. § 1630.2(n)(1). "Essential functions" do not include "the marginal functions" of the employment position. *Id.* Additionally, an accommodation is "reasonable" only if it "enables the employee to perform the essential functions of the job." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001). "[A] plaintiff who is totally disabled and unable to work at all is precluded from suing for discrimination" under the ADA. *Slomcenski v. Citibank, N.A.*, 432 F.3d 1271, 1280 (11th Cir. 2005).

Walmart argues that Melvin failed to allege the "essential functions" of her employment and that she is able to perform those "essential functions." Doc. 50 at 15-16.

Although Melvin does not articulate her allegations using the formal nomenclature "essential function" or "reasonable accommodation," it is clear from her seventh amended complaint that being present to wait on customers is an "essential function" of her job, and she was able to perform her job with the accommodation of occasionally sitting on a stool. Doc. 47 at 5. Melvin also alleges that Walmart continues to employ her in some capacity. *Id.* at 6. Thus, Melvin

plausibly alleges, although implicitly, that she is capable of performing a job for Walmart without an accommodation. *Id.* at 5; *Slomcenski*, 432 F.3d at 1280 (noting that the ADA protects only "individuals still able to perform the essential functions of a job"). A reasonable inference from the allegations in Melvin's seventh amended complaint is that Melvin is a "qualified individual" who can perform her job with a "reasonable accommodation."

To the extent Walmart argues that being present for customers—whether in a sitting or standing position—is not an "essential function," or sitting on a stool is not a "reasonable accommodation," Walmart's argument raises issues of fact not properly before the District Court on a motion to dismiss. *See Lewis v. City of Union City*, 934 F.3d 1169, 1182 (11th Cir. 2019) ("Whether a function is essential is evaluated on a case-by-case basis by examining a number of factors.") (internal quotation marks omitted) (quoting *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1230 (11th Cir. 2005)); *Adams*, 504 F. Supp. 3d at 1299 (noting that "[w]hat constitutes a reasonable accommodation depends on the circumstances").

### 3.    *Melvin Alleged Discrimination Because of Her Disability*

Walmart next argues that Melvin failed to allege a "'causal connection' between a disability and an adverse employment action." Doc. 50 at 16.

"An employer's failure to make reasonable accommodation for an otherwise qualified disabled employee constitutes discrimination under the ADA . . . ."

*D'Angelo*, 422 F.3d at 1225-26. An employer's duty to provide a reasonable accommodation, however, "is not triggered unless a specific demand for an accommodation has been made." *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999).

Melvin alleges that she provided her supervisor with a doctor's note that notified Walmart of Melvin's lower back problems and Melvin's need to limit the amount of time she remained standing. Doc. 47 at 5; Doc. 64 at 3. For three days, Walmart provided Melvin with a stool on which to sit "whenever needed." Doc. 47 at 5; Doc. 64 at 3. On the third day, Melvin's supervisor informed Melvin that she no longer would be able to use the stool because her doctor's note "did not suffice." Doc. 47 at 5; Doc. 64 at 3. Melvin has alleged that she requested from Walmart an accommodation for her lower back problems, that Walmart temporarily granted Melvin an accommodation, and that Walmart removed that accommodation after three days. Doc. 47 at 5; Doc. 64 at 3. Thus, Melvin plausibly has alleged a causal connection between her alleged disability and Walmart's alleged failure to accommodate her disability.

Insofar as pleadings by *pro se* litigants must be construed liberally, Melvin plausibly has alleged that she has a "disability" as defined by the ADA, that she is a "qualified individual," and that Walmart failed to provide a reasonable accommodation for her "disability." Melvin, therefore, has alleged a failure-to-

accommodate claim under the ADA, and Walmart's motion to dismiss this claim should be denied.

## C.    Count Four: "Unlawful Discrimination by National Origin"

In Count Four of her seventh amended complaint, Melvin alleges that her supervisor, Kelly Nelson, humiliated her in the presence of customers because of Melvin's lack of English-language proficiency. Doc. 47 at 5. The undersigned construes this as an attempt to state a claim of hostile-environment harassment in violation of Title VII.

### 1.    *Melvin Failed to Exhaust Her Administrative Remedies*

Walmart argues that Melvin failed to exhaust her administrative remedies before raising this claim. Doc. 50 at 17-19.

Before filing an employment-discrimination claim, a plaintiff must exhaust his administrative remedies by filing a charge of discrimination with the EEOC or a state agency. *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1846 (2019) (quoting 42 U.S.C. § 2000e-5(b), (c), (e)(1)). This exhaustion requirement provides the EEOC with the "first opportunity to investigate the alleged discriminatory practices [and] perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Batson*, 897 F.3d at 1327 (quoting *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (per curiam)).

The exhaustion requirement also limits the scope of a plaintiff's complaint. That is, the allegations in the complaint must "gr[o]w out of" the allegations in the plaintiff's EEOC charge, or "'amplify, clarify, or more clearly focus' the allegations" in the charge. *Gregory*, 355 F.3d at 1279-80 (first quoting *Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1332 (11th Cir. 2000); then quoting *Wu v. Thomas*, 863 F.2d 1543, 1548 (11th Cir. 1989)). The plaintiff, therefore, "may not raise 'allegations of new acts of discrimination' in the judicial proceedings" that were not first raised in his EEOC charge. *Hillemann v. Univ. of Cent. Fla.*, 167 F. App'x 747, 749 (11th Cir. 2006) (quoting *Wu*, 863 F.2d at 1547).

Melvin's August 2, 2019 EEOC charge mentions her national origin only in relation to Walmart's termination of her position in its pharmacy. Doc. 61-1 at 2. Melvin's charge does not even tangentially allege "sufficiently severe or pervasive" harassment necessary to allege a hostile-environment-harassment claim under Title VII. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002); *see Rodriguez v. Sec'y of the Dep't of Veterans Affs.*, 605 F. App'x 957, 958 (11th Cir. 2015) (holding that a hostile-environment-harassment claim arising from alleged mocking of the plaintiff's accent did not grow out of the claims in the plaintiff's EEOC charge, which addressed "assignment of duties, performance evaluations, and compensation"); *Ramon v. AT&T Broadband*, 195 F. App'x 860, 866 (11th Cir. 2006) (holding that the plaintiff failed to exhaust her administrative remedies for a

hostile-environment-harassment claim when the allegations in her EEOC charge did not "reasonably point[] to the kind of pervasive and oppressive conditions" that suggested "she intended to have the EEOC investigate the workplace" for hostile environment harassment). Melvin's March 31, 2020 EEOC charge is also devoid of any allegation of "severe or pervasive" harassment. It mentions only a single comment made by Melvin's supervisor, which is not sufficiently severe or pervasive. Doc. 64 at 3. Thus, Melvin did not properly exhaust her hostile-environment-harassment claim. For that reason alone, the District Court should dismiss this claim.

**2.    *Melvin Failed to State a Claim of Hostile-Environment Harassment***

Even if Melvin properly exhausted her hostile-environment-harassment claim, her claim should be dismissed because she has failed to state a plausible claim for relief.

Title VII prohibits employment practices that discriminate against any individual based on, among other characteristics, a person's national origin. 42 U.S.C. § 2000e-2(a)(1) (including the "terms, conditions, or privileges of employment"). Hostile-environment-harassment claims under Title VII entail "a series of separate acts that collectively constitute one unlawful employment practice." *Chambless v. La.-Pac. Corp.*, 481 F.3d 1345, 1349 n.1 (11th Cir. 2007) (internal quotation marks omitted) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*,

536 U.S. 101, 117 (2002)). A hostile-environment-harassment claim under Title VII comprises five elements:

(1)    the plaintiff belongs to a protected group;

(2)    the plaintiff has been subjected to unwelcome harassment;

(3)    the harassment was based on a protected characteristic;

(4)    the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and

(5)    the employer is responsible for such environment under a theory of vicarious or of direct liability.

*Miller*, 277 F.3d at 1275; *see Faragher v. City of Boca Raton*, 524 U.S. 775, 787 & n.1 (1998) (applying similar hostile-environment-harassment standards for sexual-harassment and racial-harassment claims).[5] To survive a motion to dismiss, a

---

[5] The elements of a *prima facie* case under *McDonnell Douglas*'s burden-shifting framework are part of an evidentiary standard, not a pleading requirement. *Surtain*, 789 F.3d at 1246 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)). Nevertheless, pursuant to the pleading requirements of Rule 8, federal courts frequently consider the elements of a *prima facie* case in assessing whether a plaintiff stated a claim upon which relief can be granted. *Id.* A complaint need not *establish* the *prima facie* elements of a hostile-environment-harassment claim, but the complaint must allege facts sufficient to create a reasonable inference that the plaintiff is entitled to relief under the claim. *See McCone*, 582 F. App'x at 801; *Henderson v. JP Morgan Chase Bank, N.A.*, 436 F. App'x 935, 938 (11th Cir. 2011); *Poague v. Huntsville Wholesale Furniture*, 369 F. Supp. 3d 1180, 1193 (N.D. Ala. 2019); *Short v. Immokalee Water & Sewer Dist.*, 165 F. Supp. 3d 1129, 1141 (M.D. Fla. 2016).

plaintiff must allege facts that, taken together, plausibly suggest he is entitled to relief. *See Surtain*, 789 F.3d at 1246 (noting that under the *Iqbal*/*Twombly* plausibility standard, a plaintiff asserting a race-discrimination claim must allege facts that "plausibly suggest" the *prima facie* elements of a race-discrimination claim).

Under the "sufficiently severe or pervasive" element, the workplace must be "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Smelter v. S. Home Care Servs., Inc.*, 904 F.3d 1276, 1284 (11th Cir. 2018) (*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (internal quotation marks omitted). Because Title VII is not a "general civility code," "'ordinary tribulations of the workplace, such as sporadic use of abusive language, . . . jokes, and occasional teasing,' cannot form the basis of a claim for actionable harassment." *Corbett v. Beseler*, 635 F. App'x 809, 816 (11th Cir. 2015) (quoting *Faragher*, 524 U.S. at 788); *see Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998). Federal law "does not guarantee a utopian workplace, or even a pleasant one." *Vore v. Ind. Bell Tel. Co.*, 32 F.3d 1161, 1162 (7th Cir. 1994). Thus, to state a claim of hostile-environment harassment, the conduct alleged must be sufficiently extreme as to amount to a change in the terms and conditions of employment. *George v. Leavitt*, 407 F.3d 405, 416 (D.C. Cir. 2005).

The "sufficiently severe or pervasive" requirement has subjective and objective elements: the alleged harassment "must result in both an environment 'that a reasonable person would find hostile or abusive' and an environment that the victim 'subjectively perceives . . . to be abusive.'" *Miller*, 277 F.3d at 1276 (quoting *Harris*, 510 U.S. at 21-22). In evaluating whether the conduct altered the terms and conditions of employment, the Supreme Court has instructed courts to consider: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Morgan*, 536 U.S. at 116; *Harris*, 510 U.S. at 23; *see also Gowski v. Peake*, 682 F.3d 1299, 1312 (11th Cir. 2012); *Miller*, 277 F.3d at 1276. No factor alone is determinative; either "severity or pervasiveness is sufficient." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (en banc). But when the allegedly harassing conduct is not particularly severe, frequency is crucial to a hostile-environment-harassment claim. *See Harris*, 510 U.S. at 21 (noting that the workplace must be "permeated with discriminatory intimidation, ridicule, and insult"); *Allen v. Ambu-Stat, LLC*, 799 F. App'x 703, 708-09 (11th Cir. 2020) (determining that "five isolated comments," over four months, were not frequent); *Corbett*, 635 F. App'x at 816 (noting that comments, although humiliating and

derogatory, were not sufficiently pervasive because they were not daily occurrences).

In her seventh amended complaint, Melvin alleges a single incident in which her supervisor "humiliated [her] before customers . . . for [Melvin's] lack of proficiency in English language." Doc. 47 at 5. In her March 31, 2020 EEOC charge, Melvin merely alleged that her supervisor "humiliated [her] because of [Melvin's] use of the English language and stating, 'Don't send her she hardly speaks English.'" Doc. 64 at 3. This incident is the only allegation Melvin has provided—in her August 2, 2019 EEOC charge; March 31, 2020 EEOC charge; and seventh amended complaint—in support of her hostile-environment-harassment claim. *Id.*; Doc. 47 at 5; Doc. 61-1 at 2. Thus, Melvin has alleged only one vague comment made by her supervisor. Melvin has not alleged that the conduct was severe, frequent (having occurred only once), or threatening, or that it interfered with Melvin's performance of her job.

An allegation that a supervisor made one ambiguous comment about an employee's English-language skills simply is insufficient to state a claim for hostile-environment harassment because one offhand comment is insufficiently severe to amount to a hostile environment. *Faragher*, 524 U.S. at 788. Melvin, therefore, has not alleged facts which plausibly indicate that she was subjected to a hostile environment. Accordingly, the District Court should dismiss Count Four—

"Unlawful Discrimination by National Origin"—for failure to state a claim upon which relief can be granted.

## D.    **Count Five: "Breach of Contract"**

In Count Five of her seventh amended complaint, Melvin attempted to allege a breach-of-contract claim. Walmart moves to dismiss this claim for failure to state a claim upon which relief can be granted. Doc. 50 at 21-24.

Under Florida law,[6] a breach-of-contract claim has three elements: "(1) a valid contract; (2) a material breach; and (3) damages." *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. Dist. Ct. App. 2008) (citing *J.J. Gumberg Co. v. Janis Servs., Inc.*, 847 So. 2d 1048, 1049 (Fla. Dist. Ct. App. 2003)). To plausibly state a breach-of-contract claim, therefore, a plaintiff first must plausibly allege that the parties formed an enforceable contract.

### 1.    *Melvin Failed to Allege the Existence of a Contract*

Walmart argues that Melvin failed to allege the existence of a contract. Doc. 50 at 21-24.

---

[6] Although Melvin does not allege that Florida law applies to this claim, the conduct at issue appears to have occurred in Florida, Walmart cites Florida law in its motion to dismiss, and Florida is the forum state. The undersigned, therefore, assumes that Florida law applies to Melvin's breach-of-contract claim. *See Kolodziej v. Mason*, 774 F.3d 736, 740 (11th Cir. 2014) (noting that courts sitting in diversity apply the forum state's substantive law) (citing *Allison v. Vintage Sports Plaques*, 136 F.3d 1443, 1445 (11th Cir. 1998)).

Under Florida law, a contract is composed of four elements: "offer, acceptance, consideration, and sufficient specification of essential terms." *CEFCO v. Odom*, 278 So. 3d 347, 352 (Fla. Dist. Ct. App. 2019) (citing *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004)); *see also Kolodziej*, 774 F.3d at 741 (noting that the elements apply to both oral and written contracts).

An offer is "[a] manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Slora v. Sun 'n Fun Fly-In, Inc.*, 173 So. 3d 1099, 1104 (Fla. Dist. Ct. App. 2015) (quoting *Lee Cnty. v. Pierpont*, 693 So. 2d 994, 996 (Fla. Dist. Ct. App. 1997)). An acceptance must be "absolute and unconditional, and identical with the terms of the offer." *Giovo v. McDonald*, 791 So. 2d 38, 40 (Fla. Dist. Ct. App. 2001) (citing *Ribich v. Evergreen Sales & Serv., Inc.*, 784 So. 2d 1201, 1202 (Fla. Dist. Ct. App. 2001)). Consideration "need not be money or anything having monetary value, but may consist of either a benefit to the promisor or a detriment to the promisee." *Real Est. World Fla. Com., Inc. v. Piemat, Inc.*, 920 So. 2d 704, 706 (Fla. Dist. Ct. App. 2006) (citation omitted).

In her seventh amended complaint, Melvin devotes one sentence to her breach-of-contract claim:

(5) Breach of Contract
"Talking Points contract offered a) choice of alternative employment
b) severance pay offered but entitlement to federal package denied c)

> promise to guarantee works hours would remain same not honored.
> 8:30 am to 7:30 pm became 4pm until midnight and other erratic hours.

Doc. 47 at 5 (grammatical, punctuation, typographical, and formatting errors in original).

Although Melvin uses the label "contract," that label is a legal conclusion that the District Court need not accept as true. *Acumen Constr., Inc. v. Neher*, 616 So. 2d 98, 99 (Fla. Dist. Ct. App. 1993) ("[T]he existence of a valid contract is a threshold question of law for the trial court.") (citing *Caltagirone v. Sch. Bd. of Hernando Cnty.*, 355 So. 2d 873, 875 (Fla. Dist. Ct. App. 1978)); *Iqbal*, 556 U.S. at 678 (noting that a district court need not accept a plaintiff's legal conclusions as true).

Looking beyond that label, Melvin has not plausibly alleged that she formed an enforceable contract with Walmart. Despite the undersigned affording Melvin six opportunities to amend her complaint, Melvin has not alleged any facts suggesting that she had a contract with Walmart beyond mere at-will employment. Melvin has not alleged acceptance of an offer or any consideration that was part of the alleged contract. Melvin also has not alleged the essential terms of the purported contract. Melvin's allegations simply are too vague and ambiguous to constitute an allegation of a contract. For that reason alone, Melvin has failed to state a breach-of-contract claim upon which relief can be granted.

### 2.    *Melvin Failed to Allege a Breach of the Alleged Contract*

Melvin's breach-of-contract claim should be dismissed for a second independent reason: she failed to allege a breach of the alleged contract. As noted above, a breach-of-contract claim requires a plaintiff to allege an actual breach. *Friedman*, 985 So. 2d at 58 (citing *J.J. Gumberg Co.*, 847 So. 2d at 1049). A formulaic allegation of a breach will not survive a motion to dismiss. *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1231, 1241 (S.D. Fla. 2011) (quoting *Twombly*, 550 U.S. at 545). Rather, a plaintiff plausibly must allege that the defendant "failed to perform a duty that goes to the essence of the contract and is of such significance that it relieves the injured party from further performance of its contractual duties." *Burlington & Rockenbach, P.A. v. Law Offs. of E. Clay Parker*, 160 So. 3d 955, 960 (Fla. Dist. Ct. App. 2015) (citation omitted).

Beyond her use of the heading "Breach of Contract," Melvin has not plausibly alleged that Walmart breached any contract, much less that any breach was material. *See Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358-59 (11th Cir. 2020) (affirming dismissal of a breach-of-contract claim because the plaintiff had "not alleged any general or specific provision of any contract that [the defendant] might have breached"). Her mere use of the heading "Breach of Contract" is insufficient to allege a breach to the extent required to state a claim upon which relief can be

granted. Therefore, for this reason too, Melvin has failed to state a claim for breach of contract.

### 3.    *Melvin Failed to Allege Damages Resulting from Any Breach*

Finally, Melvin's breach-of-contract claim should be dismissed for a third reason: she failed to allege damages resulting from a breach of the alleged contract. Under Florida law, damages are an essential element of a claim for breach of contract. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009); *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. Dist. Ct. App. 2006). This element is particularly important because the plaintiff is entitled to recover only those damages "that naturally flow from the breach and can reasonably be said to have been contemplated by the parties at the time the contract was entered into." *Mnemonics, Inc. v. Max Davis Assocs.*, 808 So. 2d 1278, 1280 (Fla. Dist. Ct. App. 2002).

Melvin neither alleges that she suffered damages nor provides a basis on which the District Court reasonably could infer that she suffered damages. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Melvin merely asserts that a "promise to guarantee works hours would remain same not honored." Doc. 47 at 5 (grammatical errors in original). She then requests "compensatory relief for breach of contract." *Id.* at 10. These are nothing more than conclusory statements, and vague ones at that. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Although courts must liberally construe the pleadings of *pro se* plaintiffs, courts cannot ignore

a *pro se* plaintiff's failure to allege essential elements of a claim. Because Melvin has failed to allege damages resulting from a breach of the alleged contract, she has failed to state a claim for breach of contract upon which relief can be granted.

## IV. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that the District Court:

1.    **GRANT IN PART** and **DENY IN PART** Walmart's partial motion to dismiss Melvin's seventh amended complaint;

2.    **DISMISS** Count Two (retaliation), Count Four (hostile-environment harassment), and Count Five (breach of contract) of Melvin's seventh amended complaint.

3.    **DENY** Walmart's motion to dismiss Count Three (failure-to-accommodate disability discrimination) of Melvin's seventh amended complaint.

4.    **REFER** this case to the undersigned for further proceedings.

At Pensacola, Florida, this 9th day of November, 2021.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. Any different deadline that may appear on the**

**electronic docket is for the court's internal use only and does not control.** An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.